UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GLEN E. FRINK,

                              Plaintiff,

v.                                                          CASE # 19-cv-0353

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      JUSTIN DAVID JONES, ESQ.
  Counsel for Plaintiff                          KENNETH R. HILLER, ESQ
600 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                PETER WILLIAM JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the

undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter

is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record

and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative

record is **DENIED**, the Defendant's motion for judgment on the administrative record is

**GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born on May 11, 1974 and has a high school education. (Tr. 252, 257). Generally, plaintiff's alleged disability consists of lumbar spine fusion, nerve damage, herniated and bulging discs in the neck, and depression. (Tr. 256). His alleged onset date of disability is February 11, 2014. (Tr. 252). His date last insured is September 30, 2019. (Tr. 19).

### B.      Procedural History

On September 14, 2015, plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 213, 220). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 11, 2017, plaintiff appeared before the ALJ, Mary Mattimore. (Tr. 61-107). On March 1, 2018, ALJ Mattimore issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 14-28). On January 16, 2019, the Appeals Council ("AC") denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2.  The claimant has not engaged in substantial gainful activity since February 11, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: lumbar spine fusion, herniated and bulging cervical discs neck, traumatic rupture of cervical disc, cervicalgia, post laminectomy syndrome, myofascial pain syndrome and arthorpathy. (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can sit for six hours a workday but for only one hour at a time; he is able to stand and walk for a total of two hours in a day but only for thirty minutes at any one time; can occasionally reach overhead with his right dominant upper extremity and frequently reach in all other directions bilaterally; and, he requires the occasional use of a cane to ambulate.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 11, 1974, and was 39 years old, which is defined as a younger individual age 18-44, on the alleged onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1534 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 11, 2014, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-28).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes three arguments, all pertaining to opinion evidence, in support of his motion

for judgment on the pleadings. First, plaintiff argues the ALJ erroneously relied on a vague medical

examining opinion while improperly weighing numerous treating opinions. Second, the RFC was not supported by a functional medical opinion and the ALJ relied on her own lay judgment. Third, the ALJ did not reconcile the psychiatric consultative examination with her RFC.  (Dkt. No. 6 at 1 [Plaintiff's Mem. Of Law]).

### B.     Defendant's Arguments

In response, defendant generally argues the ALJ's RFC was based on substantial evidence. (Dkt. No. 7 [Def.'s Mem. of Law]). More specifically, defendant argues the ALJ properly weighed the medical opinion evidence and the record was adequate for the ALJ to make a determination. (*Id*. at 7, 9). Defendant argues that if there was any error, in the ALJ's discussion of the consultative examiner's limitations for the non-severe impairment of depression, it was harmless error. (Dkt. No. 7 at 10-11).

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).


IV.   **ANALYSIS**

   **A.  Physical RFC**

   The RFC is an assessment of "the most [plaintiff] can still do despite [his] limitations."  20

C.F.R. § 404.1545(a)(1).  The ALJ is responsible for assessing plaintiff's RFC based on a review

of relevant medical and non-medical evidence, including any statement about what plaintiff can

still do, provided by any medical sources.  *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). The

ALJ limited plaintiff to a reduced range of sedentary[1] work with the following additional

limitations:

> The claimant can sit for six hours a workday but for only one hour at a time; he is able to stand and walk for a total of two hours in a day but only for thirty minutes at any one time; can occasionally reach overhead with his right dominant upper extremity and frequently reach in all other directions bilaterally; and he requires the occasional use of a cane to ambulate. (Tr. 21-22).

   Plaintiff first argues the RFC is not based on substantial evidence because the ALJ

erroneously relied on the vague opinion of Dr. Fiorini. (Dkt. No. 6 at 18). Dr. Fiorini examined

the plaintiff in January 2017 for worker's compensation purposes at which time he also reviewed

plaintiff's past treatment records (Tr. 875-889). Plaintiff confirmed to Dr. Fiorini that since his

2007 work related accident he had undergone neck surgery with improvement and right shoulder

surgery with significant improvement. (Tr. 876). The ALJ noted plaintiff reported to Dr. Fiorini

---

[1] Sedentary work requires lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R.§404.1567.

that he could lift 10 pounds from the ground, and 20 from table height. (Tr. 23, 876). Additionally,

plaintiff reported he could stand for 15-20 minutes at a time, sit for 60 minutes at a time, walk

about 15-20 minutes at a time, he could feed, bathe, and dress himself, and he did all chores for

himself, albeit with breaks. (Tr. 23, 876). The physical exam by Dr. Fiorini was largely

unremarkable with only somewhat reduced range of motion in the cervical spine and reduced range

of motion in the right shoulder with diminished sensation to light touch and pinprick over the entire

right upper extremity. (Tr. 878). Dr. Fiorini also summarized past objective diagnostic reports that

were essentially normal. (*Id.*). Dr. Fiorini diagnosed chronic neck pain status-post surgery, right

shoulder pain status-post surgery (resolved), and possible right sub-occipital neuralgia. (Tr. 879).

Dr. Fiorini noted that plaintiff's prognosis for improvement was fair and recommended that

plaintiff "remain as physically active as possible." (Tr. 879). Lastly, Dr. Fiorini assessed a

permanent partial, moderate to marked degree of disability for the purposes of worker's

compensation disability. (Tr. 880).

In her decision, the ALJ identified Dr. Fiorini's treating relationship as well as the purpose

of the examination. ALJ Mattimore accorded great weight "to the findings of the examination"

while correctly asserting that worker's compensation medical evaluations are relevant in that they

contain assessments that are useful for determining the claimant's functional ability even though

their administrative conclusions may be different. She concluded that a determination of disability

by another agency is not binding, citing regulations and social security rulings (SSRs). (Tr. 25).

Therefore, plaintiff's focus on worker's compensation classification of "permanent, partial,

moderate to marked" is misplaced. In this instance, the ALJ appropriately and clearly did not rely

on that portion of Dr. Fiorini's report but rather the examination findings and statements by the

plaintiff at that time. *See* 20 C.F.R. § 404.1527(d)(1), 416.927(d)(1); *Pintagro v. Colvin*, 1:15-CV-

00478(MAT), 2017 WL 6616377, at *2 (W.D.N.Y. Dec. 27, 2017) ("An opinion that a claimant is totally or partially 'disabled' or is under a 'disability', even from an acceptable medical source such as a treating physician, is not entitled to any particular weight"); *see also* 20 C.F.R. §§ 404.1504, 416.904 (a decision by another governmental entity that a claimant is blind is "based on its rules" and not binding on the ALJ).

Closely related are plaintiff's arguments that the ALJ erred in assessing the opinions of Dr. Simmons, physician's assistant (PA) Geist, and nurse practitioner (NP) Dybalski. (Dkt. No. 6 at 23). Each provider opined plaintiff was "totally disabled". (Tr. 25). Similarly, Dr. Hitt opined in May 2017 that plaintiff was 100 percent disabled. (Tr. 862). In an unusual argument, plaintiff asserts the ALJ rejected all of these opinions stating they were generated for worker's compensation purposes and addressed the issue of disability which was reserved for the Commissioner. According to plaintiff, Dr. Fiorini's opinion should have been treated similarly. (Tr. 25; Dkt. No. 6 at 23). However, this approach is not a "double standard" as alleged by plaintiff but rather the same rationale explained by the ALJ when addressing Dr. Fiorini. These four opinions did not include any additional exam findings, statements by the claimant, or review of medical evidence as part of their conclusory statement of disability. 20 C.F.R. § 404.1527(d)(1); *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Moreover, some kinds of findings— including the ultimate finding of whether a claimant is disabled and cannot work - are reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician' s statement that the claimant is disabled cannot itself be determinative." ).

Further, the ALJ's analysis of the opinions from Dr. Simmons, PA Geist, NP Dybalski, and Dr. Hitt did not end there. (Tr. 25). The ALJ also noted that the opinions were inconsistent with

other evidence, including the medical examinations and plaintiff's own statements about his physical abilities to Dr. Fiorini. (Tr. 25). The ALJ supported this by citing records of plaintiff's normal gait, intact sensation, normal reflexes, and statements he could lift up to 20 pounds. (Tr. 25, 773-774). The cited record also includes findings that plaintiff was caring for his two-year-old son four days a week under a custody agreement. (Tr. 25, 776-777). The inconsistency between these opinions and the plaintiff's statements about his abilities was also an adequate reason for the ALJ not to afford greater weight to these conclusory statements regardless of the treating relationship. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

## B. Duty to Develop

Plaintiff argues there was no functional assessment in the record and "the ALJ essentially relied on no opinion at all". (Dkt. No. 6 at 25). Plaintiff asserts the record is devoid of any opinions regarding functional or work capacity limitations and the ALJ was obliged to further develop the record. (*Id.*). However, plaintiff acknowledges Dr. Fiorini's opinion, incorrectly stating the ALJ gave it controlling weight, but maintains it is vague. (Dkt. No. 6 at 24).

Contrary to plaintiff's assertion, an ALJ's RFC determination does not require a medical opinion. The Second Circuit has held that where "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted). The ALJ's decision discussed objective medical evidence, medical opinions, medical history, clinical findings, prescribed treatment and recited the claimant's own descriptions of his capabilities. (Tr. 22-26). 20 C.F.R. § 416.945(a)(1); *see also* 20 C.F.R. § 416.913(a)(1)-(5).

ALJ Mattimore thoroughly discussed how the evidence regarding the physical impairments would limit plaintiff to sedentary work with additional limitations, but that same evidence did not support the severity alleged. (Tr. 26). *See* 20 C.F.R. § 416.929(c)(3)(iv)-(vi) (in "[e]valuating the intensity and persistence of [a claimant's] symptoms…and determining the extent to which [those] symptoms limit [the claimant's] capacity for work," ALJs are to consider, among other things, medication, medical treatment other than medication, and other measures taken to relieve the claimant's symptoms); *see also, e.g., Gray v. Berryhill,* No. 1:16CV00718 (HBF), 2018 WL 5792314, at *7 (W.D.N.Y. Nov. 5, 2018) ("After summarizing plaintiff's testimony, the ALJ reviewed the objective evidence of record, finding that the record did not support the plaintiff's claims that his chronic pain and other medical impairments produced the functional limitations he claimed.").

Further, the ALJ did not breach her duty to develop the record by not obtaining additional medical opinions upon which to base her RFC after giving little weight to the opinions from treating sources. *See, e.g., Wynn,* 342 F. Supp. 3d at 349 (ALJ did not "create  and widen[ ] an evidentiary  gap" by "assign[ing] 'little weight' to the medical opinions of record…Although the ALJ did not adopt the opinions of [the consultative physicians] in their entirety, she adequately explained her reasons for not doing so… Accordingly, the Court finds that the ALJ did not substitute her own judgment for a competent medical opinion, and she was not required to further develop the record."). The ALJ cited a number of medical records and opinions from the nearly 600 pages of medical records. If there are no "obvious gaps" in the administrative record, the ALJ "is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (ALJ under no obligation to seek additional information from treating source

where there were no gaps or deficiencies in the voluminous record). Furthermore, at the hearing, plaintiff stated there were only outstanding records from Dr. Simmons and he did not request any additional records to be obtained. Although the ALJ has a duty to develop the record, ultimately it is the plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. §§ 404.1512(a), 416.912(a).

### C. Non-severe Mental Limitation

Plaintiff argues the ALJ failed to reconcile her RFC with the psychiatric consultative examination by Dr. Ippolito, specifically as related to stress. (Dkt. No. 6 at 28). The Court first looks to the hearing transcript where plaintiff's counsel did not list any mental impairments when asked to identify the medically determinable severe impairments. (Tr. 64). When ALJ Mattimore inquired about "any impairments you agree are non-severe" the attorney stated depression. (Tr. 64). As cited by the ALJ in her decision, at the hearing, plaintiff also denied having any severe depression related symptoms. (Tr. 20).  Therefore, plaintiff's argument that the ALJ did not include any mental limitations is disingenuous. (Dkt. No. 6 at 29).

Dr. Ippolito opined plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others with no evidence of restriction but will have moderate limitations appropriately dealing with stress. (Tr. 759). Dr. Ippolito concluded that while plaintiff had some evidence of psychiatric problems, they "did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Tr. 759). ALJ Mattimore gave great weight to the opinion stating it was consistent with the lack of any treatment. The ALJ identified and gave great weight the additional opinions from State Agency medical examiner A.

11

Dipeolu, Ph.D., that plaintiff's mental impairment was not severe. (Tr. 20, 113-114, 123-124). The ALJ also proceeded to extensively analyze plaintiff's depression under the requisite "paragraph B criteria" for severe or non-severe mental impairments. (Tr. 20). Other portions of the ALJ's decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination. *Salmini v. Comm'r Soc. Sec.,* 371 Fed.Appx. 109 (2d Cir March 25, 2010)(citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (per curiam) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability")).

ACCORDINGLY, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is

DENIED; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 7) is

GRANTED.

Dated: May 29, 2020          *J. Gregory Wehrman*
Rochester, New York          HON. J. Gregory Wehrman
                             United States Magistrate Judge